(17 App. Div. 397.)

STALLMAN et al. v. NEW YORK STEAM CO.

(Supreme Court, Appellate Division, First Department. May 7, 1897.)

1. NEGLIGENCE—EVIDENCE—CONNECTING DEFENDANT WITH INJURY.
     The evidence is sufficient to warrant submitting to the jury the question whether defendant made the excavation in the street by which plaintiff's water pipe was injured, where defendant admitted it made an excavation in the street in the vicinity of plaintiff's premises on the day in question, and there was evidence that no other excavation was made in the street at that time.

2. SAME—PROOF OF NEGLIGENCE.
     A water pipe leading into plaintiff's premises was injured while defendant was making an excavation in the street near the pipe, so that water had flowed into plaintiff's premises, and injured his goods. The pipe had been used for 11 years, and had never leaked before. One of the plaintiffs testified that there was a hole in the pipe, and that it looked "like an open cut." Held sufficient to warrant the submission of the question of defendant's negligence to the jury.

Appeal from trial term, New York county.

Action by John H. Stallman and another against the New York Steam Company. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

The action was brought to recover damages to the plaintiffs' goods from water caused, as alleged, by the negligence of the defendant in breaking a

water pipe in the street during an excavation. The defendant, though deny-
ing the liability, offered no evidence, and the verdict rests on the testimony
of plaintiffs' witnesses. It was admitted that on January 25, 1895, the de-
fendant was engaged in making an excavation in the vicinity of the plain-
tiffs' premises, that the water-supply pipe of such premises was located at
the place of the excavation, and that the excavation was right around such
supply pipe; that during the progress of the excavation the supply pipe was
injured, and began to leak, and that the water overflowed the surface of the
street, and entered the plaintiffs' cellar, and damaged goods to the amount of
$447.30. No other excavation was being made in that street on that day, or
the day before, or the day after, and only one set of men were at work there,
and the water which covered the plaintiffs' cellar on the day in question evi-
dently came from the street. According to one of the plaintiffs, the digging
had started close to the premises, and went almost diagonally across the street.
"They were apparently looking for a steam leak. This pipe that I refer to I
should judge was about three feet under ground. Their [the defendant's]
pipes are, I think, a foot deeper, judging from what I saw on the morning of
the excavation, or afterwards. The digging was right around our lead pipe.
We had been taking water from the street through that lead pipe about
eleven years. * * * I saw a portion of this leaden pipe in our store. A
man showed it to me. * * * I saw a fracture in it. It looked to me
like an open cut. There was a hole in it. * * *" This, with other evi-
dence, made up the plaintiffs' case, and, as no witnesses were called by the
defendant, a motion to dismiss the complaint was denied, and the question
of defendant's liability presented to the jury, who resolved it in plaintiffs'
favor, and the appeal is from the judgment entered upon their verdict.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM,
and PARKER, JJ.

James W. Hawes, for appellant.
Charles N. Morgan, for respondents.

O'BRIEN, J. The theory upon which the plaintiffs' case rests re-
quired proof that the excavation complained of was made by the
defendant, and so negligently that damage to them resulted there-
from. The damage, or its amount, is not contested; but the appel-
lant insists that there is not sufficient proof that it made the excava-
tion, or, if it did, that it failed in any way to exercise due care and
caution. On the other hand, the respondents contend that there was
sufficient evidence connecting the defendant with the flow of water in
and upon the plaintiffs' premises, and as to the defendant's negligence,
which warranted the submission of both those questions to the jury.
The defendant's admission that it was engaged in making an excava-
tion in the vicinity of plaintiffs' premises on the day in question, to-
gether with the evidence that there was but one excavation at that
time going on in the street, while slight, was sufficient from which
the jury might infer that the excavation was being conducted by the
defendant.

Upon the other branch—that of negligence—a more serious ques-
tion is presented. The respondents argue that the maxim of "Res ipsa
loquitur" is applicable. This maxim was formerly of limited applica-
tion, and was practically restricted to cases where a contractual rela-
tion existed, as in the case of passengers, especially on steam railways,
where the accident arose from some unusual condition in the means
of transportation, and also to injuries to travelers upon the street
from falling objects from structures erected on or over the street;

and, to render the maxim applicable, it must be shown that the thing causing the injury was under the control of the defendant.     As well stated in Cosulich v. Oil Co., 122 N. Y. 127, 25 N. E. 261:

"Sometimes, it is true, the duty which the defendant owes to the plaintiff is of such a nature that proof of the happening of the accident under certain circumstances and given conditions will be of such legal value as to afford presumptive evidence of negligence, and cast upon the defendant the burden of explanation.     This rule has been applied to the carrier of passengers, especially in conveyances propelled by steam, where the consequences of an accident are frequently fatal to human life; and the public interests require that in such cases the carrier shall use every precaution which human skill and foresight can provide to prevent accident and its results.     Even in those cases there must be reasonable evidence of negligence before a defendant can be called upon to relieve itself from the presumption of negligence.     'But when the thing causing the injury is shown to be under the control of the defendant, and the accident is such as in the ordinary course of business does not happen, if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part.'     [Citing cases.]     But 'it is believed,' says Mr. Thompson, 'that it is never true, except in contractual relations, that the proof of the mere fact that the accident happened to the plaintiff, without more, will amount to prima facie proof of negligence on the part of the defendant.' 2 Thomp. Neg. 1227."

That the rule has been extended to actions sounding in tort, where no contractual relation existed, is shown by Clarke v. Railroad Co., 9 App. Div. 52, 41 N. Y. Supp. 78, and cases there cited.     That was an action brought to recover damages resulting from the killing of a horse, in which it appeared that while the plaintiff was driving along the street on which the defendant maintained an electric railway his horse stepped upon one of the rails of the defendant's tracks, sprang into the air, and fell down upon the track, where he died in a few minutes.     In the course of the opinion Mr. Justice Bartlett says:

"But the very accident itself tended to show that such defective insulation existed, or some other condition which would produce the same effect.     The plaintiff, or any other traveler, suffering a similar misadventure, could have no means of ascertaining the precise state of the defendant's plant in respect to insulation, or in respect to contact with other sources of electrical energy. The fact that the defendant brought electricity into the street for use as a motive power, and the fact that electricity so employed was capable of escaping in such a way as to produce the casualty which actually took place were sufficient, taken together, to justify the inference that the accident was due to the agency of the defendant, in the absence of proof that it was otherwise caused.     The maxim 'Res ipsa loquitur' is directly applicable. [Citing cases.]     The learned counsel for the respondent, in his brief, apparently assumes that this doctrine cannot be invoked unless the facts are such as to exclude every hypothesis but that of the defendant's negligence, and argues that the railroad   *   *   *   might have been in perfect order, and that the accident might have been occasioned by the carelessness of third persons engaged in stringing telegraph or telephone or electric light wires.     But the rule is one which relates merely to negligence prima facie, and it is available without excluding all other possibilities.   *   *   *   The doctrine of 'Res ipsa loquitur' simply calls upon the defendant, after proof of the accident, to give such evidence as will exonerate him, if any there be; and relieves the plaintiff from the burden of proving the nonexistence of an adequate explanation or excuse."

Aside from the fact that plaintiffs' goods were injured by water flowing into their cellar, we have additional evidence from which the inference could be fairly drawn that the defendant, while en-

gaged in digging in search of what was stated by one of the witnesses to be a steam leak, or for some other purpose, caused a fracture which "looked like an open cut" in the lead pipe that for 11 years prior to that time had been used by the plaintiffs for taking water from the street into their premises. To paraphrase the language of Mr. Justice Parker in the opinion from which we have already quoted, we think that the proof of the happening of the accident under such circumstances and conditions was of such legal value as to afford presumptive evidence of negligence, and cast upon the defendant the burden of explanation. Having offered no explanation, the question was properly submitted to the jury, and their verdict should not be disturbed.

The other questions raised by the appellant,—as to the plaintiffs' contributory negligence, and that the damage occurred in and through a vault in the street occupied by them, for which no license is shown, —we think are without merit. The only ruling upon evidence that is challenged is the permitting of testimony as to the repair of the pipe after the accident. Conceding that such testimony was immaterial or incompetent, we think it was perfectly harmless, because its tendency could only be to prove the existence of some defect in the pipe; and it was proven beyond contradiction by other testimony, not objected to, that the pipe had a fracture in it like an open cut; and testimony as to whether it was repaired afterwards or not did not strengthen the fact which the evidence alluded to tended to establish.

We think the judgment was right, and should be affirmed, with costs. All concur.

---

(17 App. Div. 435.)

BAKER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   May 7, 1897.)

OFFICERS—FEES—STENOGRAPHER TO BOARD OF CORONERS.

Appeal from trial term, New York county.

